U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

APR 2 7 2018

TONY R. MOORE, CLERK
BY: _____
      DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| NATCHITOCHES VOTERS AND CIVIC LEAGUE | CIVIL ACTION NO. 1:17-1519 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| NATCHITOCHES PARISH GOVERNMENT | MAG. JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

Before the court is a "Motion to Dismiss by Natchitoches Parish Government" (R. #28) (appearing through Rick Nowlin in his Official Capacity as President of the Parish of Natchitoches, and the Natchitoches Parish Council, hereinafter referred to as the "Parish Government"), wherein the mover seeks to dismiss the instant lawsuit because Plaintiff (1) has no standing and (2) has failed to show any justiciable controversy between Plaintiff and/or its members, and Defendant.

## ALLEGATIONS

Plaintiff, the Natchitoches Voters and Civic League (the "League"), filed the instant declaratory action seeking a declaration of rights under the Head Start Act (the "Act"), in an attempt to outline the relationship between the Natchitoches Parish Government and Head Start and Early Head Start.[1] Plaintiff seeks to have this court interpret and apply 45 CFR 1301, etc. seq.[2] In its complaint, Plaintiff requests that this court answer the following questions:

---

[1] Complaint, R. #1, ¶ 1. ¶ 3.
[2] ¶ ¶ 3 and 5.

1

1. Does the right to hire, fire and discipline employees of Head Start and Early Head Start commence before the Natchitoches Parish Government?
2. Who has the right to hire, fire and discipline employees of Head Start and Early Head Start?
3. Does the right to hire, fire and discipline the executive director of Head Start and Early Head Start commence before the Natchitoches Parish Government?
4. Who has the right to hire, fire and discipline the executive director of Head Start and Early Head Start?
5. What are the rights and duties of the agency?
6. What are the rights and duties of the governing body?
7. What are the rights and duties of the policy council?
8. What role, if any, does the Natchitoches Parish Government play in constituting the policy council?
9. Are the governing body and policy council co-equal bodies?

The League requests that this court answer these questions, and that the Defendant be enjoined from the following acts regarding the Head Start Program:

(1) Inserting the Office of Community Service in the chain of command;
(2) Allowing the Office of Community Service from making recommendations pertaining to the continued employment/termination of the Head Start Director,

(3) Making employment decisions as they pertain to Head Start and Early Head Start; and

(4) Playing a role in the constituting of the policy council.

## **STANDARD OF LAW**

A motion to dismiss for lack of standing is properly brought under Federal Rule of Civil Procedure 12(b)(1).[3] The Supreme Court has held that there must be an actual controversy that is justiciable under Article III for actions brought pursuant to the Declaratory Judgment Act in order for a court to declare the rights and other legal relations.[4] To meet the standing requirement under Article III, the party invoking federal jurisdiction must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[5]

Federal Rule of Civil Procedure 8(a)(2) requires that pleadings which state one or more claims for relief must contain "...a short and plain statement of the claim showing that the pleader is entitled to relief..." This "notice pleading" requirement is balanced against Federal Rule of Civil Procedure 12(b)(6) which provides that a court may dismiss one or more claims when the pleader fails to state a claim upon which relief may be granted.

---

[3] See Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).
[4] MedImmune, Inc. v. Genetech, Inc. 549 U.S. 118 (2007).
[5] Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

3

For the purpose of considering a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled factual allegations as true and view them in the light most favorable to the plaintiff.[6] The pleading must allege facts which, when taken as true, raise the pleader's claim to the level of a justiciable controversy. A motion to dismiss for failure to state a claim should be denied unless "it appears to a *certainty* that the plaintiff would be entitled to no relief under any state of facts" alleged in the petition.[7]

Only those facts which are well-pleaded and state a "plausible claim for relief" must be accepted.[8] A claim is plausible when the court can reasonably infer from the facts that the defendant is liable to the plaintiff; a claim is not plausible when it only states conclusions of a "formulaic recitation of the elements of a cause of action."[9] However, even those facts which are extremely doubtful are to be assumed correct.[10]

## **LAW AND ANALYSIS**

The Parish Government seeks to dismiss the instant lawsuit because The League has no standing; the Parish Government maintains that The League has failed to allege a particular injury as to the League or any of its members. Specifically, the League has failed to show how it or any of its members would be affected by employment decisions, including those related to the Executive Director. The complaint does not allege that a termination has occurred, will occur, and if so, how it would affect The League and/or any

---

[6] In re Katrina Canal Breaches Litigation, 495 F.3d 191 (5th Cir. 2007) (internal citations omitted).
[7] Banco Contintental v. Curtiss Nat'l Bank of Miami Springs, 406 F.2d 510, 514 (1969)(quoting Arthur H. Richland Co. v. Harper, 302 F.2d 324, 325 (5th Cir. 1962)(citing Des Isles v. Evans, 200 F.2d 614, 615 (5th Cir. 1952); Millet v. Godchaux Sugars, Inc., 241 F.2d 264, 265 (5th Cir. 1957)).
[8] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).
[9] Whitley v. Hanna, 726 F.3d 631, 638 (2009)(quoting Ashcroft, 556 U.S. at 678).
[10] Twombly, 550 U.S. at 555; Lindquist v. City of Pasadena, 525 F.3d 383, 386 (5th Cir. 2008).

of its members. Moreover, the complaint fails to show any actual controversy that would be resolved through a Declaratory Judgment.

In an attempt to establish "standing", The League alleges that it is in the business of protecting the rights of African-Americans, and its purpose is to improve the political, educational, social and economic status of minority and poor people in the Natchitoches Parish communities.[11] The League argues that several of its members have standing to bring this matter.[12]

In its amending petition, the League complains that the "Head Start Agency" has never officially established a governing body as mandated by 45 CFR 1301.1.[13] It further complains that the Parish Government prohibited the policy council from doing the following:

   a. Activities to support the active involvement of parents in supporting program operations, including policies to ensure that the Head State agency is responsive to community and parent needs;

   b. Program recruitment, selection, and enrollment priorities;

   c. Applications for funding and amendments to applications for funding for programs under this subchapter, prior to submissions of applications described in this clause;

   d. Budget planning for program expenditures, including policies for reimbursement and participation in policy council activities;

   e. Bylaws for the operation of the policy council;

   f. Program personnel policies and decisions regarding the employment of program staff, consistent with paragraph (1)(E)(iv)(IX), including standards of conduct for program staff, contractors, and volunteers and criteria for the employment and dismissal of program staff;

---

[11] First Supplemental and Amending Petition for Damages, R. #26, ¶ 4A.
[12] The League has attached numerous affidavits of individuals who claim to have standing.
[13] First Supplemental and Amending Petition for Damages, R. #26, ¶ 23.

5

g. Developing procedures for how members of the policy council of the Head Start agency will be elected;

h. Recommendations on the selection of delegate agencies and the service areas for such agencies;...

The Parish Government is the parish government's executive branch; it operates as a president-council form of government with an elected president and elected council.[14] The Parish Government applied for and received funds to operate the Head Start and Early Head Start program from July 1, 2014 to June 30, 2019.[15]

45 CFR 1301 et seq. provides the law that governs the agency (the Parish Government) that received the Head Start funds. The League asserts that the Parish Government is the "Head Start Agency," but has failed to officially establish a governing body as mandated by 45 CFR 1301.1.[16] The League further asserts that the Parish Government has designated the Office of Community Services ("OCS") as the "Head Start Agency" without legal and regulatory authority.[17] The League asserts that the OCS has illegally inserted the executive director of the OCS and vested him/her with the authority to make personnel recommendations to the OCS and the Parish Government pertaining to the continued employment of the Head Start Director.[18] The League maintains that the "policy council" should make the employment/termination of the Head Start Director and not the Head Start Agency, the OCS or the Parish Government.[19]

---

[14] Complaint, R. #1, ¶ 6.
[15] Id.
[16] Id. ¶ 15.
[17] The complaint refers the court to a letter from the Natchitoches Parish Assistant District Attorney, exhibit B.
[18] Id., ¶ 17.
[19] Id. ¶ 18.

6

The League further complains that the policy council is supposed to be elected by the parents of children currently enrolled in the Head Start program and the Parish Government has no role in constituting the policy council.[20]

The Parish Government seeks dismissal of the instant suit because the League lacks standing to bring this lawsuit based on the absence of an "injury in fact" alleged in the complaint. Specifically, the complaint does not allege that The League or any of its members are employed by – terminated or disciplined by – or seek employment with – Head Start or Early Head Start. Therefore, there are no employment decisions that can and/or will cause an injury in fact.

The League maintains that it has organizational standing. To have organizational standing, a plaintiff must show (1) its organization's asserted legally protected interest is germane to the purposes of the petitioner organization; (2) any of the plaintiff organization's members has standing to sue on his or her own behalf; and (3) the participation of individual members in the lawsuit is not required.[21] An individual member must satisfy the standing requirements.[22]

The League argues that it is in the business of protecting the rights of African-Americans, and thus the purpose of this litigation is germane to the purpose of the organization because Head Start services low-income children that are overwhelming African-American.

---

[20] Id. ¶ 20.
[21] Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).
[22] Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

7

The Parish Government relies on Simon v. Eastern Kentucky Welfare Rights Organization,[23] wherein the Supreme Court stated:

> We note at the outset that the five respondent organizations, which describe themselves as dedicated to promoting access of the poor to health services, could not establish their standing simply on the basis of that goal. Our decisions make clear that an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III. ... Insofar as these organizations seek standing based on their special interest in the health problems of the poor their complaint must fail.

The League argues that the "injury in fact" is not being able to constitute the policy council, noting that § 642(c)(2)(B) of the Act requires that the policy council "be elected by parents of children who are currently enrolled in the Head Start program" and "members at large of the community served by the Head Start agency (including any delegate agency), who may include parents of children who were formerly enrolled in the Head Start program of the agency."

The Parish Government argues that Plaintiff has failed to allege any specific actions in relation to membership of the policy council, and that the affidavits attached to Plaintiff's supplemental and amending complaints are purely conclusory. In other words, there are no facts alleged in the complaint as amended to assert that the rights of African-Americans are being violated, ignored or in favor of other segments of the Natchitoches Parish population.

The Parish Government argues that The League's concern that the policy council is to be elected by parents of children currently enrolled in the Head Start program and of

---

[23] 42 U.S. 26, 39-40, 96 S.Ct. 1917, 1925 (1976).

members at large served by the Head Start Agency is conclusory, and does not establish an "injury in fact" sufficient to show standing. The League complains of personnel recommendations relating to the Head Start Director, but does not allege any harm or injury to The League or its members. Thus, the Parish Government maintains that there is no justiciable claim.

The League argues that any member has standing and refers the court to 29 affidavits attached to its amended complaint. The Affidavits of Frankie McDaniel, Sharon Edmond, Joe E. Winston, Gerald Johnson, Debra Gillie-Johnson, Radeana Washington, Rev. Albert J. Gillie, Sr., Charvelvia McDaniels, Annissa P. Mitchell, Pendrick Gillie, Sr. Mary Isaac, Dashana D. Braxton, Brenda F. Forest, Geneva A. Mitchell, Linda Sue Mitchell, Chris D. Lynch and Chelsea Lynch, Lysheila Marshall, Beverly A. Seymore, James Wilson, Qynthia Phillips, Linda Gail Franklin, Yvette Ceasar-Williams, Patricia Williams, Aquanella Remo, Doris M. Hullaby, Oswald Taylor, Ethel P. Forest, Jackie A. Forest, Annette Johnson, attest to the following:

1. I am a member of the Natchitoches Voters and Civil [sic] League;
2. I have a child/children who attends/attended a Head Start School;
3. Under Section 642(c)(2)(B), I am qualified to serve on the policy council;
4. I have expressed an interest in serving as a policy council member but the defendant, Natchitoches Parish Government, does not allow the policy council to "be elected by the parents of children who are currently enrolled in the Head Start program of the Head Start agency" and be "comprised of members at large of the community served by the Head Start agency"; . . .[24]

The Affidavit of Obbie Gillie adds that:

> I have expressed an interest in serving as a governing body member, however, the defendant, Natchitoches Parish Government, which is the "head Start Agency", has never

---
[24] R. #26-6, pp. 1-29.

officially established a governing body, as mandated by 45 CFR 1301.1; . . .[25]

The affidavits of Clara Silvie, Mary O. Bush, James W. Scarborough, Gloria Smith, and Essie Ruth Flanagan attest to the following:

1. I am a member of the Natchitoches Voters and Civil [sic] League;

2. I am/was a policy council member;

3. As a policy council member, the body is/was prohibited by defendant, Natchitoches Parish Government, from doing any of the following;

    a. Activities to support the active involvement of parents in supporting program operations, including policies to ensure that the Head Start agency is responsive to community and parent needs;

    b. Program recruitment, selection, and enrollment priorities;

    c. Applications for funding and amendments to applications for funding for programs under this subchapter, prior to submission of applications described in this clause;

    d. Budget planning for program expenditures, including policies for reimbursement and participation in policy council activities;

    e. Bylaws for the operation of the policy council;

    f. Program personnel policies and decisions regarding the employment of program staff, consistent with paragraph (1)(E)(iv)(IX), including standards of conduct for program staff, contractors, and volunteers and criteria for the employment and dismissal of program staff;

---

[25] R. #26-7.

      g. Developing procedures for how members of the policy council of the Head Start agency will be elected;

      h. Recommendations on the selection of delegate agencies and the services areas for such agencies;

. . .[26]

The court has reviewed each of the aforementioned affidavits and finds that they are conclusory, and fail to state facts to support the assertions made in the affidavits. Without facts, the affidavits are merely conclusions. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim."[27] Moreover, The League has failed to assert in its complaint, supported by these affidavits, that it or any of its members have suffered an injury in fact such that the actions of the Parish Government invaded a legally protected interest that is "(a) concrete and particularized ... and (b) actual or imminent, not conjectural or 'hypothetical...'"[28]

Furthermore, neither the complaint nor the affidavits assert any justiciable claim against the Parish Government or state any claim upon which relief can be granted. Specifically, there are no allegations in the original complaint, "amending petition" or affidavits spelling out who, when, where and what act(s), in contravention of a specified statute or regulation and perpetrated by Defendant, caused injury or harm to Plaintiff organization or any of its members. The Plaintiff's lawsuit in essence is an invitation to the court to conduct an exhaustive study of the relevant Head Start regulations and provide Plaintiff with an operating manual, based on the court's interpretation of said regulations, with no purpose whatsoever to resolve any actual controversy. In the

---

[26] R. #26-8.
[27] City of Clinton Ark. v. Pilgrim's Pride Corp., 632 F.3d 148, 153-54 (5th Cir. 2010).
[28] Lujan, supra, at 504 U.S. 555, 560-561, 112 S.Ct. 2130, 2136.

11

absence of such controversy, neither the League, nor its members have standing to bring this action, thus depriving this court of jurisdiction to entertain this complaint.

## CONCLUSION

For the reasons set forth above, the motion to dismiss will be granted dismissing the instant lawsuit with prejudice at Plaintiff's costs.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 27th day of April, 2018.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE